UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DERRICK D. SPEECH,

            Plaintiff,

v.

UNKNOWN SHANK et al.,

            Defendants.

_____/

Case No. 1:22-cv-404

Honorable Paul L. Maloney

**<u>OPINION</u>**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the

Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is

required to dismiss any prisoner action brought under federal law if the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a

defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The

Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520

(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly

incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will

dismiss Plaintiff's complaint for failure to state a claim against Defendant Shank. The Court will

also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against Defendant

Kludy. Plaintiff's First Amendment retaliation claim against Defendant Kludy remains in the case.

**Discussion**

## I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Officer Unknown Shank and Coordinator Unknown Kludy.

Plaintiff identifies as transgender and alleges that his status is "well documented" with the MDOC. (ECF No. 1, PageID.2.) As of August 29, 2020, Plaintiff was assigned to housing unit 4, cell 113A, with inmate Brown-Mosby. (*Id.*) Plaintiff claims that on that day, he was involved in religious study when inmate Brown-Mosby accosted him and requested sexual favors. (*Id.*) Plaintiff told him no. (*Id.*) Inmate Brown-Mosby grabbed Plaintiff's t-shirt "in a threatening manner," and insisted that Plaintiff "allow him to perform sexual acts upon him." (*Id.*) Plaintiff "continued to protest and pull away." (*Id.*) He managed to break free after several minutes. (*Id.*) Inmate Brown-Mosby told Plaintiff that if general population heard about the encounter, he and his "brothers" (prison gang) would kill Plaintiff and his family. (*Id.*) Plaintiff did not report the incident because of inmate Brown-Mosby's threat. (*Id.*)

The next day, Plaintiff confided in inmate Blackshere and told him about the incident that had occurred with inmate Brown-Mosby. (*Id.*) Inmate Blackshere in turn reported the incident to Prison Counselor (PC) Loomis (not a party). Loomis initiated a Prison Rape Elimination Act (PREA) investigation. (*Id.*) Loomis questioned Plaintiff about the incident and told Plaintiff that he would have to give a statement if "anything was going to be done." (*Id.*) Plaintiff responded that he did not feel comfortable giving a statement because of inmate Brown-Mosby's "vast/pervasive gang affiliation and his/its influence throughout the housing unit." (*Id.*) Plaintiff also did not want to risk his safety and the safety of his immediate family. (*Id.*) Loomis told

2

Plaintiff that in the absence of a statement, he "could draft the PREA complaint and related report in a third-party context." (*Id.*) Plaintiff "ultimately conceded to PC Loomis's third-party PREA complaint." (*Id.*)

That same day, inmate Brown-Mosby was transferred to housing unit 1. (*Id.*) Around this time, there had been a massive COVID-19 outbreak at the facility. (*Id.*) Inmate Brown-Mosby was then transferred to housing unit 3. (*Id.*) Plaintiff was subsequently transferred to the same housing unit. (*Id.*) Upon entering the unit, Plaintiff was "instantly approached" by "affiliate gangmembers" of inmate Brown-Mosby. (*Id.*, PageID.3.) Those individuals told Plaintiff that they were aware of the PREA complaint. (*Id.*) "While wielding a makeshift knife (shank), affiliate gangmembers of [inmate Brown-Mosby] attempted pressuring Plaintiff with physical force to report to the housing unit officer station and request to be transferred from the housing unit." (*Id.*) Plaintiff responded that he was not leaving, and "removed himself from the encounter." (*Id.*)

Plaintiff went to his assigned cell and began unpacking his property. (*Id.*) While doing so, inmate Brown-Mosby entered the cell, grabbed Plaintiff by the neck, and began choking and jerking him. (*Id.*) Inmate Brown-Mosby told Plaintiff that if anyone found out about the PREA complaint, his gang membership could put him and his family "in a highly dangerous situation." (*Id.*) Plaintiff was gasping for air. (*Id.*) Inmate Brown-Mosby eventually released Plaintiff and left his cell. (*Id.*)

Plaintiff reported the incident to Defendant Shank, who was at the officer's station at the time. (*Id.*) Plaintiff told Defendant Shank about the past PREA complaint as well. (*Id.*) Defendant Shank responded that "he and the Dept. (MDOC) have other 'things' to be concerned about other than your PREA concerns." (*Id.*) Defendant Shank told Plaintiff that he could either go back to his cell and "deal with his problems like a 'convict should," or go to protective custody. (*Id.*) Plaintiff

immediately went to the phone, called the PREA hotline, and "informed the responding party of the 'hostile' deliberate indifference Defendant [Shank] ha[d] exhibited." (*Id.*)

Plaintiff utilized the PREA hotline several times over the course of 17 days. (*Id.*) Plaintiff "made numerous attempts to contact PREA Coordinator Defendant Kludy to convey all PREA related incidents leading up to . . . Defendant Shank['s] deliberate indifference to Plaintiff's PREA related assault by a reported PREA Offender." (*Id.*) Plaintiff ultimately reported Defendant Kludy's deliberate indifference to the hotline. (*Id.*)

Defendant Kludy summoned Plaintiff to his office for an interview based on Plaintiff's allegations. (*Id.*) During this interview, Defendant Kludy told Plaintiff that if he continued with his allegations concerning Defendant Kludy's handling of the investigation, he would make sure that Plaintiff was transferred away from his family to a facility in the Upper Peninsula, or that Plaintiff was transferred to a "housing unit with prisoners who[] are 'highly [predacious]' and would enjoy Plaintiff while in the shower or other isolated areas in the housing unit." (*Id.*) Plaintiff insisted on continuing with his allegations. (*Id.*, PageID.4.) Defendant Kludy also told Plaintiff that he was going to transfer inmate Brown-Mosby to another housing unit. (*Id.*)

Plaintiff returned to his housing unit and was immediately approached by officers, handcuffed, and escorted to temporary segregation. (*Id.*) He was in segregation for about two months. (*Id.*) During that time, Plaintiff wrote to Lambda Legal to request assistance regarding the "punitive conditions" he was experiencing in segregation. (*Id.*) Lambda Legal sent Plaintiff a legal resource packet telling him to submit a complaint to the Department of Justice (DOJ) or the MDOC's internal affairs division. (*Id.*) Plaintiff wrote to both entities. (*Id.*) According to Plaintiff, the MDOC's internal affairs division investigated and concluded that there was no finding to suggest a reason to continue holding Plaintiff in segregation. (*Id.*)

Thereafter, Defendant Kludy was "demoted" as PREA Coordinator and replaced with D. Brazee. (*Id.*) Plaintiff alleges that after his release from segregation, Defendant Kludy called the housing unit Plaintiff was transferred to and told the unit officers that they should not hesitate to issue a misconduct to Plaintiff if he "does 'anything' that would suggest a violation of MDOC rules." (*Id.*) Plaintiff contends that since that time, he has been punished in retaliation for his complaints to the DOJ and MDOC's internal affairs division.

Based on the foregoing, Plaintiff alleges violations of his First and Eighth Amendment rights. (*Id.*, PageID.4–5.) He seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.5.)

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Retaliation Claim

Plaintiff alleges that Defendant Kludy retaliated against him, in violation of the First Amendment, for Plaintiff's "exercise of [his] right to seek redress from prison through use of the prison grievance system." (ECF No. 1, PageID.5.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Here, Plaintiff has adequately alleged protected conduct: he states that he made numerous complaints, including complaints to the DOJ and the MDOC's internal affairs division, about Defendant Kludy's handling of his PREA complaint regarding the incident with inmate Brown-Mosby.

### 2.    Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Here, Plaintiff contends that Defendant Kludy threatened to have him transferred away from his family to a facility in the Upper Peninsula or to a housing unit with prisoners who are "highly predacious" and would "enjoy Plaintiff while in the shower or other isolated areas in the housing unit." (ECF No. 1, PageID.3.) Such specific threats are sufficient to satisfy the adverse action requirement. *See, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). Plaintiff's placement in segregation immediately after his interview with Defendant Kludy can also constitute adverse action. *See Hill*, 630 F.3d at 474–75. Plaintiff also suggests that after he was released from segregation and Defendant Kludy was "demoted" from being PREA Coordinator, Defendant Kludy told officers in Plaintiff's new housing unit to not hesitate to issue Plaintiff misconducts for "anything that would suggest a violation of MDOC rules." (ECF No. 1, PageID.4.) Plaintiff contends that since then, he has been punished in various ways. (*Id.*) "[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004). Plaintiff, therefore, has alleged sufficient facts to meet the second element of his retaliation claim against Defendant Kludy.

### 3.      Retaliatory Motive

Finally, to sufficiently state a First Amendment retaliation claim, Plaintiff must allege facts that support an inference that the adverse action was motivated by the protected conduct. Plaintiff alleges that Defendant Kludy made the threats to have him transferred if Plaintiff persisted with his complaints concerning Defendant Kludy's handling of his PREA complaint. (ECF No. 1, PageID.3.) Moreover, Plaintiff suggests that Defendant Kludy was demoted as PREA Coordinator shortly after Plaintiff's complaints to the DOJ and the MDOC's internal affairs division, at which time Defendant Kludy told the housing unit officers to issue misconducts to Plaintiff. (*Id.*, PageID.4.) Temporal proximity "may be 'significant enough to constitute indirect evidence

of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Here, Plaintiff's allegations, taken as true and in the light most favorable to Plaintiff, support the inference that the adverse actions were motivated by Plaintiff's protected conduct. Plaintiff's allegations are, therefore, sufficient to state a First Amendment retaliation claim against Defendant Kludy.

### B.      Eighth Amendment Claims

Plaintiff contends that Defendants were deliberately indifferent to his safety and protection, in violation of the Eighth Amendment. (ECF No. 1, PageID.4–5.) Plaintiff also contends that Defendant Kludy violated his Eighth Amendment rights by failing to correct and by encouraging Defendant Shank's misconduct regarding Plaintiff's PREA incident. (*Id.*, PageID.5.) Essentially, Plaintiff appears to suggest that Defendants failed to protect him adequately from inmate Brown-Mosby.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard

than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

Here, nothing in Plaintiff's complaint as pleaded permits the Court to conclude that Defendants were aware of and consciously disregarded an excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. As an initial matter, Plaintiff has not alleged any facts suggesting that Defendants knew about the first incident between Plaintiff and Brown-Mosby and were personally involved in moving Plaintiff to the housing unit where inmate Brown-Mosby had been moved after Plaintiff made his PREA complaint. After the second

assault by inmate Brown-Mosby, Plaintiff told Defendant Shank about the assault and about his

prior PREA complaint. (ECF No. 1, PageID.3.) While Defendant Shank told Plaintiff to either go

to protective custody or deal with his problems "like a 'convict' should," nothing in the complaint

suggests that inmate Brown-Mosby threatened to assault or assaulted Plaintiff after the second

incident. Moreover, Plaintiff immediately reported the issue to the PREA hotline. Defendant Kludy

was made aware of the situation after the second assault; again, however, nothing in the complaint

suggests that Defendant Kludy was aware of any threatened assault or assault by inmate Brown-

Mosby to Plaintiff after that second incident. Notably, Defendant Kludy told Plaintiff that inmate

Brown-Mosby would be moved to a different housing unit. (*Id.*, PageID.4.) The factual allegations

set forth by Plaintiff are simply insufficient to rise to a level of deliberate indifference by

Defendants. Consequently, Plaintiff's Eighth Amendment failure to protect claims against

Defendants will be dismissed.[1]

Plaintiff also suggests that Defendant Kludy violated his Eighth Amendment rights by

failing to correct Defendant Shank's misconduct and by encouraging said misconduct.

---

[1] A liberal construction of Plaintiff's complaint suggests that he believes Defendants failed to comply with MDOC policies implementing the PREA. For example, he suggests that Defendant Shank failed to take any action after he reported the second assault by inmate Brown-Mosby to him. Plaintiff, however, "has no independent cause of action for [Defendant Visser's alleged] failure to comply with the Prison Rape Elimination Act." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) (citing *Montgomery v. Harper*, No. 5:14-CV-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff.")); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.") (quoting *Amaker v. Fischer*, No. 10-CV-0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (collecting cases)); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not.").

(ECF No. 1, PageID.5.) Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

12

Plaintiff fails to allege any facts showing that Defendant Kludy encouraged or condoned the conduct of Defendant Shank, or authorized, approved, or knowingly acquiesced in the conduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, because Plaintiff's Eighth Amendment supervisory liability claims against Defendant Kludy are premised on nothing more than respondeat superior liability, such claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Shank will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against Defendant Kludy. Plaintiff's First Amendment retaliation claim against Defendant Kludy remains in the case.

An order consistent with this opinion will be entered.

Dated:    June 2, 2022                          /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge